IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                    No. CR 16-0454 JB

BILLY GROSS,

      Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on the Defendant's Objections to Presentence Investigation Report, filed November 2, 2016 (Doc. 36)("Objections").  The Court held a hearing on November 22, 2016.  The primary issue is whether the Plaintiff United States of America breached its plea agreement with Gross that a 4-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) "is inapplicable to the sentencing in this matter."   Presentence Investigation Report ¶ 4, at 3, filed October 16, 2016 (Doc. 34)("PSR").  Because the Court concludes that the United States' approval of the PSR's application of the 4-level enhancement under § 2K2.1(b)(6)(B) was a breach of the United States' plea agreement, and that the Court should recuse itself from Gross' case as a result of the breach, the Court will not further rule on Gross' Objections.  The Court orders that the United States withdraw the Response by the United States to the Defendant's Sentencing Memorandum and Request for a Sentence Variance, filed October 17, 2016 (Doc. 41)("Response"), and resubmit a response that corresponds with its obligation in ¶ 8(b) of the Plea Agreement, <u>see</u> Plea Agreement ¶ 8(b), at 5-6, filed August 18, 2016 (Doc. 31)("Plea Agreement").  The Court also orders Gross to withdraw his Reply RE Government Response to Objections to PSR, filed November 18, 2016 (Doc. 45)("Reply"), and resubmit a

reply in response to the United States' new response ordered above.  Further, the Court orders that the United States withdraw the Letter from Presiliano Torrez, filed October 18, 2016 (Doc. 46)("Torrez Letter").  The Court will thus recuse itself and have this matter submitted to a new judge untainted by the arguments made in the withdrawn response.

## FACTUAL BACKGROUND

In the Plea Agreement, Gross admitted the following facts:

On August 7, 2015, I drove a Chevrolet pickup truck at a high rate of speed in the area of Foothill Road SW and Arenal Road SW in Albuquerque, New Mexico which is an area within Bernalillo County.  My high-rate of speed driving caught the attention of a Bernalillo County Sheriff s Office (BCSO) deputy and the deputy tried to traffic stop me so I sped up to get away from him.  Though I didn't know that the truck that I was driving was stolen, I figured that the deputy was trying to stop me because there was something wrong with the truck and I was not interested in being traffic stopped so I tried to evade the deputy.  In the course of my evasion, I ditched the pickup truck and then ran, jumped fences and ran some more along a ditch bank.  As I ran along the ditch bank I got rid of my gun that I was carrying - a working Jimenez Arms, model J.A., 22, .22LR caliber semi-automatic pistol, serial number 1125499.  I kept with me the pistol's magazine loaded with four Winchester brand .22LR caliber cartridges.  (I understand that having possession of this gun and the ammunition had an affect [sic] in interstate commerce because I understand that for the gun to be in my possession in New Mexico interstate commerce had to have been affected since guns and ammunition are not manufactured in New Mexico and that in order for them to be present in New Mexico interstate commerce had to have brought them here.)  Tiring from fleeing and being chased by the deputy, I tried to lose him by crouching behind a vehicle parked in the driveway of a residence on Foothill Road.  This crouching behind a parked vehicle didn't work and the deputy caught up with me and arrested me.  The deputy recovered, from the ground around where I was crouched hiding, the pistol's magazine loaded with four rounds of Winchester brand .22LR caliber ammunition.  I told the deputy, when he asked about it, that I had a gun but that I threw it away on the ditch bank during the ditch bank chase because I knew that my felony conviction history and my firearm possession on that day (or on any other day at any time) carried negative implications with regard to a future felony conviction such as described within and by this plea agreement.  The deputy went back and recovered my pistol.

On August 7, 2015, I had previously sustained three felony convictions in the State of New Mexico, a 2005 conviction for Possession with Intent to Distribute Controlled Substances, a 2007 conviction for Possession of Burglary Tools and another 2007 conviction for Rceiving [sic] or Transferring a Stolen

Vehicle.

Plea Agreement at 3-4.  Further, according to the PSR, "[i]n the immediate area to where the

defendant was arrested, deputies located a magazine to a firearm with four 22 mm rounds of

ammunition, a small baggie with black tar substances (heroin), and keys with a Chevrolet symbol

on them."  PSR ¶ 10, at 4.  "The defendant also advised while running he dropped heroin and the

firearm because he did not want to pick up new charges."  PSR ¶ 11, at 4.

## PROCEDURAL BACKGROUND

On August 18, 2016, the United States and Gross entered into a plea agreement.  See Plea

Agreement at 1.  In the Plea Agreement, the United States stipulated:

> In view of the Memorandum Opinion and Order issued in United States vs.
> Lopez, 2015WL5090699 and in the ambiguous context of the defendant stating
> that he believed that the pickup truck referred to in the admission of facts
> contained in paragraph six in the plea agreement was not a stolen vehicle in a
> stolen status, it is regarded that the United States Sentencing Guidelines §
> 2K2.1(b)(6)(B) is inapplicable to the sentencing in this matter.

Plea Agreement ¶ 8(b), at 5-6 (emphasis added).  The United States Probation Office ("USPO")

then disclosed its first PSR on October 19, 2016.  See PSR at 1.  In the PSR, the USPO

recognized the provision in ¶ 8(b) of the Plea Agreement, providing the language word-for-word

in the PSR's recitation of the charge and conviction.  See PSR ¶ 4, at 3.  The PSR, though,

applied the enhancement nonetheless, stating:

> **Specific Offense Characteristics**:  The defendant used or possessed the firearm
> or ammunition in connection with another felony offense; or possessed or
> transferred any firearm or ammunition with knowledge, intent, or reason to
> believe that it would be used or possessed in connection with another felony
> offense.  The defendant was in possession of a stolen motor vehicle; however,
> both parties have agreed the defendant did not know the vehicle was stolen and an
> increase would not apply pursuant to a Memorandum and Opinion Order in US v.
> Lopez (2015WL5090699).  It is also noted, the defendant was also in possession
> of heroin (felony offense) during the instant offense while in possession of the
> firearm, therefore an increase of four offense levels is applied.  USSG
> 2K2.(b)(6)(B).

- 3 -

PSR ¶ 18, at 5.

The USPO disclosed a revised PSR on November 7, 2016.  See Presentence Investigation Report, filed November 7, 2016 (Doc. 37)("Revised PSR").  The Revised PSR makes some minor unrelated additions, but includes the same provision referencing ¶ 8(b) of the Plea Agreement, as well as the provision that, nonetheless, applies the enhancement on the basis of the heroin possession.  See Revised PSR ¶ 4, at 4; ¶ 29, at 6-7.  For clarity, regarding the revisions, the USPO provides:

> The offense conduct section of the report was amended.  This section includes the statement made by the defendant, as reported in a deputy's police report and that it was also heard on the arresting deputy's belt tape recording device.  An acceptance of responsibility statement was added, as provided by the defendant and his attorney.  The warrant for arrest in case number D-202-CR-201602724 was amended to reflect the defendant's warrant was based on Grand Jury Indictment, and not for failing to appear.  Minor corrections to the name of the defendant's girlfriend and age of the defendant's children were amended to reflect current age and proper spelling.  Also attached to the re-disclosed Presentence Report is an updated Attachment A to reflect the updated conditions of supervision.  As of November 1, 2016, the 2016 guidelines manual went into effect and all mandatory, standard, and special conditions of supervision were modified.  Therefore, an updated Attachment A to the presentence report is attached to reflect the new conditions of supervision, which the Court may consider imposing in this case.

Revised PSR at 1.  Using the slightly different language from that within the PSR, the Revised PSR applies the enhancement, despite referencing ¶ 8(b) of the Plea Agreement, stating:

> **Specific Offense Characteristics:** The defendant used or possessed the firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense.  The defendant was in possession of a stolen motor vehicle; however, both parties have agreed the defendant did not know the vehicle was stolen and an increase would not apply pursuant to a Memorandum and Opinion Order in US v. Lopez (2015WL5090699).  The United States Probation Office holds the position the defendant did know, or should have known the vehicle he was in, was stolen by the evidence provided through discovery.  It is also noted, the defendant was also in possession of heroin (felony offense) during the instant offense while in

- 4 -

> possession of the firearm, therefore an increase of four offense levels is applied.
> USSG 2K2.(b)(6)(B).

Revised PSR ¶ 29, at 6-7.  Thus, because Gross was "in possession of the firearm" in connection with his "possession of heroin (felony offense)," the USPO nonetheless applies the enhancement. Revised PSR ¶ 29, at 6-7.  Notably, the Revised PSR, like the PSR, notes that, while Gross was allegedly also "in possession of a stolen motor vehicle," the parties "have agreed the defendant did not know the vehicle was stolen and an increase would not apply pursuant to a Memorandum Opinion and Order in US v. Lopez (2015WL5090699)."   Revised PSR ¶ 29, at 6-7.  The Revised PSR, however, further maintains that Gross knew the vehicle was stolen.  See Revised PSR ¶ 29, at 6-7.

On November 2, 2016 -- before the USPO disclosed its Revised PSR -- Gross filed his Objections to the PSR.   Gross, in part, objects to the 4-level enhancement under § 2K2.1(b)(6)(B), which applies to possession of any firearm "in connection to another felony." U.S.S.G. § 2K2.1(b)(6)(B)("If the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense . . . .").  As discussed, both the Revised PSR and PSR ostensibly apply the enhancement, despite recognizing ¶ 8(b) of the Plea Agreement, because Gross was "in possession of the firearm" in connection with his "possession of heroin (felony offense)."  Revised PSR ¶ 29, at 6-7; PSR ¶ 18, at 5; Addendum to the Presentence Report at 1, filed November 7, 2016 (Doc. 39)("Addendum").

The Addendum to the Revised PSR disagrees with the parties' agreement that Gross did not know the vehicle was stolen and addresses the application of § 2K2.1(b)(6)(B) in that context.  See Addendum at 1-2.  Accordingly, the Addendum provides:

> The United States Probation Office maintains the position, the application of
> USSG § 2K2.1(b)(6)(B) is appropriate.  The vehicle the defendant was driving
> was stolen.  The defendant claims he did not know the vehicle was stolen;

however, he is unable to provide specifics of a vehicle purchase. Furthermore, evidence in discovery provides several pieces of information that infers the vehicle was stolen. The evidence clearly shows the defendant eluded law enforcement in a dangerous and reckless manner and began doing this behavior, just prior to law enforcement engaging their emergency lights. The defendant further evaded law enforcement by running on foot. Second, when arresting officers began questioning the defendant about why he ran, the defendant reported to law enforcement it was because he did not have registration for the vehicle. Third, the vehicle is painted white, over an original blue color. Fourth, the steering column in the vehicle is damaged and held together by black tape. Lastly, the VIN did not match the paperwork to the vehicle. It is clear, the defendant did know or did have reason to know the vehicle he was driving, was stolen. The defendant, through counsel also rejects the application of USSG § 2K2.1(b)(6)(B) based on the possession of heroin. The objection notes "simple possession of heroin" is not a felony offense under federal law. It is noted the defendant was charged with Possession of a Controlled Substance (heroin) in violation N.M. Stat. 30-31-23D (4th degree felony), punishable by up to 18 months imprisonment. Application Note 14(c) of USSG § 2K2.1 describes "another felony offense" for the purposes of subsection (b)(6)(B), means any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained. The defendant, through counsel contends there is insufficient evidence before the Court to show the possession of the firearm facilitated his possession of a stolen motor vehicle and possession of heroin. Several circuits have held that "possession of a firearm" may facilitate an offense by emboldening the possessor to commit the offense. The defendant was in possession of a firearm and a loaded magazine. A reasonable person could find that the firearm gave the defendant a sense of security -- emboldening him -- to venture from his home with drugs and a stolen motor vehicle. Courts have also held that if a drug user chooses to carry his illegal drugs out into public with a firearm, there are many ways in which the weapon can facilitate the drug offense and dangerously embolden the defendant.

Addendum at 1-2. Thus, despite the Plea Agreement's stipulation that "it is regarded that the United States Sentencing Guidelines § 2K2.1(b)(6)(B) is inapplicable to the sentencing in this matter," the Revised PSR and Addendum nonetheless applies § 2K2.1(b)(6)(B), because Gross was "in possession of the firearm" in connection with his "possession of heroin (felony offense)." Revised PSR ¶ 29, at 6-7.

The United States filed its Response on October 17, 2016. See Response at 1. In the Response, the United States provides: "The United States has reviewed the presentence report

and agrees with the analysis therein. The Defendant's total adjusted offense level is 23 and his criminal history category is IV, thus resulting in a United States Sentencing Guideline (USSG) sentencing range of 70 months to 87 months of imprisonment." Response ¶ 1, at 1-2. The Response does not thereafter address the provision in ¶ 8(b) of the Plea Agreement or the USPO's application of § 2K2.1(b)(6)(B), which results in the offense level calculation of 23. See Response at 1-6.

Gross filed his Reply to the Response on November 18, 2016. See Reply at 1. The Reply maintains, in relevant part, that "[t]he government conceded that this enhancement was inapplicable," in the Plea Agreement, and thus "should be held to its agreement." Reply at 2-3. The Reply thus requests the offense level be adjusted to 19 after removal of the 4-level enhancement. See Reply at 5.

On November 18, 2016, the Court, after reviewing the relevant filings, issued a minute order requesting more information from the parties. See Court's Minute Order, filed November 18, 2016 (Doc. 42)("Court's Minute Order"). The Court's Minute Order provides:

> pursuant to the direction of District Judge James O. Browning, requesting that in preparation for today's sentencing the United States and the United States Probation Office identify specifically which statute and/or statutes they contend the Defendant was violating when he possessed the firearm, such that U.S.S.G. Section 2K2.1(b)(6)(B) applies. The United States and the U.S.P.O. should then give the Court a copy of the statute or statutes so that the Court can determine whether all the elements of the alleged crime or crimes are met.

Court's Minute Order. Both the USPO and United States responded to the Court's Minute Order in preparation for the hearing. See Second Addendum to the Presentence Report, filed November 18, 2016 (Doc. 43)("Second Addendum"); Torrez Letter (providing the United States' Response in a document signed by Assistant United States Attorney Presiliano A. Torrez). The Second Addendum answers:

The United States Probation Office has applied a four level increase to the defendant's offense level pursuant to USSG 2K2.1(b)(6)(B) as the defendant was driving a stolen motor vehicle while he was a felon in possession of a firearm. Furthermore, the defendant was in possession of heroin while he was a felon in possession of a firearm. The defendant was charged with Receiving/Transferring a Stolen Motor Vehicle (NM Statute 30-16D-4) and Possession of a Controlled Substance (NM Statute 30-31-23D). It is under these premises USSG 2K2.1(b)(6)(B) was applied.

Second Addendum at 1. The Torrez Letter answers:

Pursuant to the Court's request, the United States identifies the criminal statutes which we contend the defendant violated when he possessed the firearm in this case. In that connection, the United States identifies the following statutes:

1.  NMSA § 30-31-6(B)(l0), which identifies heroin as a Schedule I substance;
2.  NMSA § 30-31-23(A), which makes it unlawful for a person to possess a controlled substance . . .;
3.  NMSA § 30-31-23(F)(4), which makes it unlawful to possess any amount of a controlled substance enumerated in Schedule I. Hence, the possession of any amount of heroin in the State of New Mexico is a felony.

Torrez Letter at 1.

Before sending out the Court's Minute Order, the Court researched Gross' objection to the PSR's application of the enhancement on the basis of Gross' possession of heroin. The Objections rely on Lopez v. Gonzalez, 549 U.S. 47 (2006), in which the Supreme Court of the United States held that, while a drug conviction was a felony under state law, where it was a misdemeanor at federal law, the conviction would not qualify as a controlled substance aggravated felony disqualifying the defendant from discretionary cancellation of removal. See Objections at 6. See also Lopez v. Gonzalez, 549 U.S. at 55, 60 ("In sum, we hold that a state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under that federal law."). The Court's research indicated that the "defendant was charged with Possession of a Controlled Substance (heroin) in

- 8 -

violation of N.M. Stat. 30-31-23D (4th degree felony), punishable by up to 18 months imprisonment."  Addendum at 2.  Application Note 14(C) addresses this situation, stating that "'another felony offense,' for purposes of subsection (b)(6)(B), means any federal, state, or local offense, other than explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or conviction obtained."  U.S.S.G. § 2K2.1 App. Note 14(C).  N.M. Stat. Ann. § 30-31-23(E) is the operative statutory provision with respect to schedule I narcotics, referencing N.M. Stat. Ann. § 30-31-23(D), and provides that possession "of a narcotic drug enumerated in Schedule I or II or a controlled substance analog of a narcotic drug enumerated in Schedule I or II is guilty of a fourth degree felony and shall be sentenced pursuant to the provisions of Section 31-18-15 NMSA 1978."   N.M. Stat. Ann. § 31-18-15 provides that the basic sentence of imprisonment "for a fourth degree felony, [is] eighteen months imprisonment."  N.M. Stat. Ann. § 30-31-6(B)(10) identifies heroin as a Schedule I narcotic.

Gross also objected to § 2K2.1(b)(6)(B)'s application, because "Probation alleges no nexus between either offense and the firearm."  Objections at 7.  Regarding the drug offense, Gross argues that "personal quantities of drugs are NOT included as an offense where the connection is presumed from the proximity, and nothing in the police interrogation of Mr. Gross or any other report remotely suggests any connection . . . ."  Objections at 7.  The Court's research in this respect indicated that the Application Notes appeared to address the situation here, providing that the enhancement applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs . . . because the presence of the firearm has the potential of facilitating another felony offense . . . ."  U.S.S.G. § 2K2.1 App. Note 14(B)(emphasis added).  The Tenth Circuit, as well, has stated that carrying a firearm has the

- 9 -

potential to facilitate mere possession of drugs.  See United States v. Justice, 679 F.3d 1251, 1255 (10th Cir. 2012).   The Defendant in United States v. Justice "was carrying methamphetamine on his person." 679 F.3d at 1255.  The Tenth Circuit stated that "a reasonable person could find that the firearms gave him a sense of security emboldening him to venture from his home with drugs that someone might wish to take from him by force."  United States v. Justice, 679 F.3d at 1255.

> When the defendant is out and about, with drugs on his person and a loaded firearm within easy reach, one can infer that the proximity of the weapon to the drugs is not coincidental and that the firearm "facilitated, or had the potential of facilitating," the drug offense by emboldening the possessor.

United States v. Justice, 679 F.3d at 1255.

The Court held a hearing on November 22, 2016.  See Transcript of Hearing, taken November 22, 2016 ("Tr.").[1]  The Court began the hearing by indicating that "I am prepared to proceed, but it seems to me that we may have an issue about whether I'm the appropriate judge if the United States has breached its plea agreement[.]  [I]t would seem to me that I might need to determine that issue [first]. . . ."  Tr. at 1:25-2:9 (Court).  Accordingly, Gross maintained that "it's very clear in the plea agreement that the Government agreed not to assert that Mr. Gross possessed . . . a gun in the course of another felony . . . and I'd ask if the Government would be willing to withdraw its contention made in its response . . . ."  Tr. at 2:10-21 (Converse).  The United States did not initially understand Gross' contention.  See Tr. at 3:11-12 (Spiers).  The United States explained that

> I understand that the presentence report writer calculated under the 2 B 1.1 . . . I think it is with regard to the stolen vehicle and/or heroin offense, that the position of the presentence report writer was that there was a connection that registered

---

[1]The Court's citations to the transcript of this hearing refer to the court reporter's original, unedited version.  Any final version may contain slightly different page and/or line numbers.

that activated a four point increase in the offense level.  I don't think, I don't believe that I specifically tackled that issue . . .  Although it's quite clear that our position in the response that we made to the sentencing memorandum was that we agreed that the calculation with regard to ultimate offense level we adopted that, that ultimate calculation.

Tr. at 4:12-25 (Spiers).  The United States, then, given the apparent breach issue, stated that "There are times when probation in the presentence report recommendations don't reconcile or agree with the United States position.  That does happen."  Tr. 5:10-13 (Spiers).  The United States, at this point, then said "[n]ow, I don't know if that's the issue specifically involved and if not, then I need to speak to something else.  But that's my inference."  Tr. 6:8-11 (Spiers).

The Court then told the United States that:

I think what the contention . . . is when she filed her objections to the PSR and then the probation office stood by its analysis in the, in its addendum, so the probation office I think both said that they thought Mr. Gross knew the vehicle was stolen and that there were other felonies that he committed at the time that he possessed the firearm.  When Ms. Converse objected and pointed out that there was an agreement in the plea agreement, and challenged that, then they did an addendum, and the addendum was even more clear that they maintained that the application of [the] USSG section [] was appropriate because they felt that the defendant did know or did have reason to know in the vehicle was stolen, but there was also some felonies that he committed with the firearm.  And the Government's response, I hope I have these in order but 11/17, the response of the Government was the United States has reviewed the presentence report and degrees with the analysis therein. . . .  What then I think Ms. Converse is saying is that that breached a portion of the plea agreement, which said that and I'm just quoting a portion of it . . . it is regarded that United States sentencing guideline section 2K2.1-B6B is inapplicable to the sentencing in this matter. . . .  I sent out a letter saying, then looking at your response, I sent a minute order how the saying, well, what does the United States think at this time violated, and then you gave a list of status that you thought I guess it would have been Mr. Torrez sent out list of statutes that he thought were violated at the time that the firearm was in possession.

Tr. at 6:10-7:23 (Court).  After that back and forth, the United States indicated that "I would not persist in [su]staining that position that that section applies . . . ."  Tr. at 8:14-18 (Spiers).

Gross then indicated that

> the response document 41 that takes the position that appears to be at odds with
> the plea, with the stipulations in the plea agreement and maybe Mr. Spiers being
> ill while he did it and perhaps not even in the office to refer to documents when
> he did it explains this.  If the Government moves to withdrawn document 41
> which takes that position then that would solve the problem, I believe.

Tr. at 9:12-20 (Converse).  The Court then concluded that there was a breach of the Plea Agreement, and that it would order that the Response be withdrawn so "then the Government can file an amended response" addressing the Plea Agreement.  Tr. at 9:21-25 (Court).  Further, the Court was inclined to strike "Ms. Mann's response including Mr. Torrez's letter," which were filed pursuant to the Court's Minute Order, and Gross' Reply.  Tr. at 10:1-23 (Court, Converse).  According to the Court, "this will give you a judge that is not having to deal with all this breach here."  Tr. at 11:20-22 (Court).  Gross appeared content with the reassignment, did not request that the Court retain the case, and did not at that time move to otherwise withdraw his plea agreement.

### RELEVANT LAW REGARDING THE SENTENCING GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States of America severed the mandatory provisions from the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1976 (the "Act"), thus making Guidelines sentencing ranges effectively advisory. In excising the two sections, the Supreme Court left the remainder of the Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  United States v. Booker, 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in § 3553(a)(2):

**(A)**    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

**(B)**    to afford adequate deterrence to criminal conduct;

**(C)**    to protect the public from further crimes of the defendant; and

**(D)**    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

[A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551.  To achieve these purposes, § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the Tenth Circuit have clarified that, while the Guidelines are one of several factors enumerated in § 3553(a), they are entitled to considerable deference.  See Rita v. United States, 551 U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses."  United States v. Cage, 451 F.3d at 593 (internal quotation marks omitted).  A

- 13 -

reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a).  See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable."  United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. 338, 349 (2007), as recognized in United States v. Zamora-Solorzano, 528 F.3d 1247, 1251 n.3 (10th Cir. 2008).  This presumption, however, is an appellate presumption and not one that the trial court can or should apply.  See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S. 38, 46-47 (2007); Kimbrough v. United States, 552 U.S. 85, 90-91 (2007).  Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory[2] Guidelines sentence.  See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S. at 46-47; Kimbrough v. United States, 552 U.S. at 90-91.

---

[2]Attorneys and courts often say that the "Guidelines" are advisory, but it appears more appropriate to say that the Guideline ranges are advisory.  Gall v. United States, 522 U.S. at 46 ("As a result of our decision [in United States v. Booker], the Guidelines are now advisory [.]"); United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)(unpublished)("[T]he Guidelines are advisory, not mandatory."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory.").  The Court must consider the Guidelines, see Gall v. United States, 522 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, see Gall v. United States, 522 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.").  The Court is not mandated, however, to apply a sentence within the calculated Guidelines range.  See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-Booker have discretion to assign sentences outside of the Guidelines-authorized range . . . .").  Accord United States v. Chavez-Rodarte, No. CR 08-2499 JB, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's Booker arguments, the sentencing court must first determine whether the defendant is entitled to downward departures. The sentencing court may, however, also use these same departure factors in the Booker calculus, even if the court does not grant a downward departure.

_____

The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole. The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

. . . .

The Supreme Court held in United States v. Booker that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in Kimbrough v. United States that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. 85, 101 (2007)(alteration in original)(internal quotation marks omitted). In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield. In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their United States v. Booker-granted authority to post-Guidelines analysis "variances." Irizarry v. United States, 553 U.S. 708, 710-16 (2008). A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably. See Gall v. United States, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

United States v. Nolf, 2014 WL 3377695, at *20-21 (D.N.M. 2014)(Browning, J.)(emphasis in original).

United States v. Apodaca-Leyva, 2008 WL 2229550, at *6 (D.N.M. 2008)(Browning, J.). The Supreme Court recognized, however, that the sentencing judge is "in a superior position to find facts and judge their import under § 3553(a) in each particular case." Kimbrough v. United States, 552 U.S. at 89. Applying § 3553(a)'s factors, the Court has found that the case of an illegal immigrant who re-enters the United States to provide for his two children and two siblings was not materially differentiated from other re-entry cases, and, thus, no variance from the Guidelines sentence was warranted. See United States v. Alemendares-Soto, 2010 WL 5476767, at *12 (D.N.M. 2010)(Browning, J.). On the other hand, in United States v. Jager, 2011 WL 831279 (D.N.M. 2011)(Browning, J.), although the defendant's military service was not present to an unusual degree and, thus, did not warrant a departure, the Court found that a variance was appropriate, because the defendant's military service was "superior and uniformly outstanding," as the defendant appeared to have been "trustworthy[] and dedicated, and he served with distinction." 2011 WL 831279, at *14.

## LAW REGARDING THE BURDEN OF PROOF REQUIRED FOR ENHANCEMENTS UNDER THE GUIDELINES

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court reaffirmed the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment within the range prescribed by statute." 530 U.S. at 481. The Supreme Court cautioned, however, that the Constitution of the United States of America limits this discretion and that the Sixth Amendment to the Constitution requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S.

at 490.  In <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), the Supreme Court elaborated on its holding in <u>Apprendi v. New Jersey</u>, stating that the "statutory maximum for <u>Apprendi</u> purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  542 U.S. at 303 (emphasis, citations, and internal quotations omitted).   In <u>United States v. Booker</u>, the Supreme Court held that, because the sentencing guidelines are no longer mandatory, "<u>Apprendi</u> does not apply to the present advisory-Guidelines regime."  <u>United States v. Ray</u>, 704 F.3d 1307, 1314 (10th Cir. 2013).  <u>See United States v. Booker</u>, 543 U.S. at 259 ("[W]ithout this provision [of the Guidelines statute] -- namely, the provision that makes the relevant sentencing rules mandatory and imposes binding requirements on all sentencing judges -- the statute falls outside the scope of <u>Apprendi</u>'s requirement."  (alterations and internal quotations omitted)).  The Supreme Court has recently held that the requirements in <u>Apprendi v. New Jersey</u> apply to facts that increase a defendant's mandatory minimum sentence.  <u>See Alleyne v. United States</u>, 133 S. Ct. 2151, 2155 (2013).

In <u>United States v. Magallanez</u>, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that <u>Blakely v. Washington</u> and <u>United States v. Booker</u> had not changed the district court's enhancement-findings analysis.  <u>See United States v. Magallanez</u>, 408 F.3d at 684-85.  <u>United States v. Magallanez</u> involved plain-error review of a drug sentence in which a jury found the defendant, Magallanez, guilty of conspiracy to possess with intent to distribute and to distribute methamphetamine.  <u>See</u> 408 F.3d at 676.  As part of its verdict, the jury, through a special interrogatory, attributed to the defendant 50-500 grams of methamphetamine; at sentencing, however, the judge -- based on testimony of the various amounts that government witnesses indicated they had sold to the defendant -- attributed 1200 grams of methamphetamine to the

defendant and used that amount to increase his sentence under the Guidelines.  See 408 F.3d at 682.  The district court's findings increased the defendant's Guidelines sentencing range from 63 to 78 months to 121 to 151 months.  See 408 F.3d at 682-83.  The Tenth Circuit stated that, both before and after Congress' passage of the Sentencing Reform Act, "sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict."  408 F.3d at 684.  Although United States v. Booker made the Guidelines effectively advisory, the Tenth Circuit in United States v. Magallanez reaffirmed that "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before."  408 F.3d at 685 (citation omitted).

The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof,'" has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance."  United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008)(quoting United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993)).[3]  "[T]he application of an enhancement . . . does not implicate

---

[3]Although the Tenth Circuit stated in United States v. Washington that "the issue of a higher than a preponderance standard is foreclosed in this circuit," 11 F.3d at 1516, the Tenth Circuit has since classified its holding as leaving "open the possibility that due process may require proof by clear and convincing evidence before imposition of a Guidelines enhancement that increases a sentence by an 'extraordinary or dramatic' amount," United States v. Ray, 704 F.3d at 1314 (quoting United States v. Olsen, 519 F.3d at 1105).  See United States v. Olsen, 519 F.3d at 1105 (affirming the use of the preponderance-of-the-evidence standard for sentencing facts that increase a sentence in the "'ordinary case'" (quoting United States v. Washington, 11 F.3d at 1516)).  The Tenth Circuit has not yet found that an "extraordinary or dramatic" instance warrants a higher standard of proof for certain facts that enhance a defendant's sentence.  United States v. Olsen, 519 F.3d at 1105 (explaining that it need not determine whether a higher standard of proof is required to sentence a defendant for committing perjury in relation to a grand jury investigation, because the enhancement did not require the district court to determine that the defendant committed murder, but only that he obstructed a homicide investigation).  See United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)(affirming a

the Supreme Court's holding in Apprendi v. New Jersey."  United States v. Reyes-Vencomo, No. CR 11-2563 JB, 2012 WL 2574810, at *3 (D.N.M. June 26, 2012)(Browning, J.).  The Tenth Circuit applies Apprendi v. New Jersey's requirement that a fact be submitted to a jury only where the fact would increase a defendant's sentence "above the statutory maximum permitted by the statute of conviction."  United States v. Price, 400 F.3d 844, 847 (10th Cir. 2005). Accord United States v. Ray, 704 F.3d at 1314.  A defendant may assert an error under Apprendi v. New Jersey only where the fact at issue increased his sentence beyond the statutory maximum. See United States v. O'Flanagan, 339 F.3d 1229, 1232 (10th Cir. 2003)(holding that a defendant could not assert an error under Apprendi v. New Jersey, because "his sentence does not exceed the statutory maximum"); United States v. Hendrickson, 2014 WL 6679446, at *6 (10th Cir. 2014)(unpublished)[4](holding that, after Alleyne v. United States, "[i]t is well-established that

---

preponderance-of-the-evidence standard for facts that enhance a defendant's offense level 4 levels); United States v. Valdez, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic increase in a sentence because of a sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges entitled the defendant to a clear-and-convincing evidence standard at sentencing, and noting that the Tenth Circuit "foreclosed by binding precedent" this argument); United States v. Washington, 11 F.3d at 1516 (holding that a district court need not find by any more than a preponderance of the evidence the amount of cocaine a defendant distributed, even though its findings increased the defendant's sentence from twenty years to consecutive forty-year terms).

[4]United States v. Hendrickson is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court finds that United States v. Hendrickson, United States v. Schmidt, 353 F. App'x 132 (10th Cir.

sentencing factors need not be charged in an indictment and need only be proved to the sentencing judge by a preponderance of the evidence").  As the Court has noted:

> The Court explained that, although the decision of the Supreme Court of the United States in <u>Alleyne v. United States</u>, . . . 133 S. Ct. 2151 . . . (2013), expands the rule from <u>Apprendi v. New Jersey</u>, 530 U.S. 466 . . . (2000)(holding that facts that increase the maximum sentence a defendant faces must be proven to a jury beyond a reasonable doubt), to cover facts that increase the mandatory minimum sentence, as well as the maximum sentence, it does not prohibit district judges from continuing to find advisory sentencing factors by a preponderance of the evidence.  <u>See</u> [<u>United States v. Sangiovanni</u>, No. CR 10-3239 JB,] 2014 WL 4347131, at *22-26 [(D.N.M. Aug. 29, 2014)(Browning, J.)].

<u>United States v. Cervantes-Chavez</u>, 2014 WL 6065657, at *14 (D.N.M. 2014)(Browning, J.).

## <u>LAW REGARDING RELEVANT CONDUCT FOR SENTENCING</u>

In calculating an appropriate sentence, the Guidelines consider a defendant's "offense of conviction and all relevant conduct under [U.S.S.G.] § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context."  U.S.S.G. § 1B1.1, cmt. 1(H).  In <u>United States v. Booker</u>, the Supreme Court noted:

> Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the <u>real conduct</u> that underlies the crime of conviction.  That determination is particularly important in the federal system where crimes defined as, for example, "obstruct[ing], delay[ing], or affect[ing] commerce or the movement of any article or commodity in commerce, by . . . extortion," . . . can encompass a vast range of very different kinds of underlying conduct.

543 U.S. at 250-51 (emphasis in original)(quoting 18 U.S.C. § 1951(a)).  The Supreme Court's reasoning in <u>United States v. Booker</u> "suggests that the consideration of real conduct is necessary

---

2009)(unpublished), and <u>United States v. Banda</u>, 168 F. App'x 284 (10th Cir. 2006)(unpublished), <u>United States v. Fent</u>, 199 F. App'x 724 (10th Cir. 2006)(unpublished), and <u>United States v. Waterbury</u>, 206 F. App'x 805 (10th Cir. 2006)(unpublished), all have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Sealed Memorandum Opinion and Order.

to effectuate Congress' purpose in enacting the guidelines."  United States v. Reyes-Vencomo,

2012 WL 2574810, at *5 (D.N.M. 2012)(Browning, J.).

Section 1B1.3 provides that the base offense level under the Guidelines "shall be

determined" based on the following:

> **(1)** **(A)** all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> **(B)** in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;
>
> **(2)** solely with respect to offenses of a character for which [U.S.S.G.] § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;
>
> **(3)** all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and
>
> **(4)** any other information specified in the applicable guideline.

U.S.S.G. § 1B1.3(a)(1)-(4).  The Court may consider, as relevant conduct, actions that have not

resulted in a conviction.  Pursuant to the commentary to U.S.S.G. § 6A1.3, evidentiary standards

lower than beyond a reasonable doubt are permitted to show relevant conduct.  The court may

rely upon reliable hearsay, so long as the evidence meets the preponderance-of-the-evidence

standard.  See United States v. Vigil, 476 F. Supp. 2d 1231, 1245 (D.N.M. 2007)(Browning J.).

Accord United States v. Schmidt, 353 F. App'x 132, 135 (10th Cir. 2009)(unpublished)("The

district court's determination of 'relevant conduct' is a factual finding subject to a preponderance of the evidence standard, and clear error review."). The evidence and information upon which the court relies, however, must have sufficient indicia of reliability. See U.S.S.G. § 6A1.3 ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.").

Supreme Court precedent on relevant conduct comes primarily from two cases: Witte v. United States, 515 U.S. 389 (1995), and United States v. Watts, 519 U.S. 148 (1997). In Witte v. United States, the Supreme Court upheld the use of uncharged conduct at sentencing against a double-jeopardy challenge. The defendant in Witte v. United States had been involved in an unsuccessful 1990 attempt to import marijuana and cocaine into the United States, and in a 1991 attempt to import marijuana. See 515 U.S. at 392-93. In March 1991, a federal grand jury indicted the defendant for attempting to possess marijuana with intent to distribute in association with the defendant's latter attempt to import narcotics. See 515 U.S. at 392-93. At sentencing, the district court concluded that, because the 1990 attempt was part of the continuing conspiracy, it was relevant conduct under U.S.S.G. § 1B1.3, and therefore calculated the defendant's base offense level based on the aggregate amount of drugs involved in both the 1990 and 1991 episodes. See 515 U.S. at 394.

In September, 1992, a second federal grand jury indicted the defendant for conspiring and attempting to import cocaine in association with the 1990 activities. See 515 U.S. at 392-93. The defendant moved to dismiss the indictment, arguing that he had already been punished for the cocaine offenses, because the district court had considered those offenses relevant conduct at

the sentencing for the 1991 marijuana offense.  See 515 U.S. at 395.  The district court agreed with the defendant and dismissed the indictment, holding that punishment for the cocaine offenses would violate the prohibition against multiple punishments, which the Double Jeopardy Clause of the Fifth Amendment to the Constitution provides.  See 515 U.S. at 395.  The United States Court of Appeals for the Fifth Circuit reversed the district court and held that "the use of relevant conduct to increase the punishment of a charged offense does not punish the offender for the relevant conduct."  United States v. Witte, 25 F.3d 250, 258 (5th Cir. 1994).  In reaching this holding, the Fifth Circuit acknowledged that its conclusion was contrary to other United States Courts of Appeals, including the Tenth Circuit, that had previously considered this question.  See 25 F.3d at 255 n.19 (citing United States v. Koonce, 945 F.2d 1145 (10th Cir. 1991)).

The Supreme Court granted certiorari to resolve the conflict between the Courts of Appeals and affirmed the Fifth Circuit.  See 515 U.S. at 395.  In finding that the district court's consideration of the defendant's relevant conduct did not punish the defendant for that conduct, the Supreme Court concluded that "consideration of information about the defendant's character and conduct at sentencing does not result in 'punishment' for any offense other than the one of which the defendant was convicted."  515 U.S. at 401.  The Supreme Court reasoned that sentencing courts had always considered relevant conduct and "the fact that the sentencing process has become more transparent under the Guidelines . . . does not mean that the defendant is now being punished for uncharged relevant conduct as though it were a distinct criminal offense."  515 U.S. at 402.  Sentencing enhancements do not punish a defendant for uncharged offenses; rather, they reflect Congress' policy judgment "that a particular offense should receive

a more serious sentence within the authorized range if it was either accompanied by or preceded by additional criminal activity."  515 U.S. at 403.

In United States v. Watts, the Supreme Court, in a per curiam opinion, relied upon Witte v. United States' holding and upheld, against a double-jeopardy challenge, a sentencing judge's use of conduct for which the defendant had been acquitted.  See 519 U.S. at 149.  In reaching its result in United States v. Watts, the Supreme Court noted that its conclusion was in accord with every United States Court of Appeals -- other than the United States Court of Appeals for the Ninth Circuit -- and that each had previously held that a sentencing court may consider conduct for which the defendant had been acquitted, if the government establishes that conduct by a preponderance of the evidence.  See 519 U.S. at 149 (citing, e.g., United States v. Coleman, 947 F.2d 1424, 1428-29 (10th Cir. 1991)).  The Supreme Court began its analysis in United States v. Watts with 18 U.S.C. § 3661: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  18 U.S.C. § 3661.  See United States v. Watts, 519 U.S. at 151.  According to the Supreme Court, 18 U.S.C. § 3661 embodies the codification of "the longstanding principle that sentencing courts have broad discretion to consider various kinds of information" and that "the Guidelines did not alter this aspect of the sentencing court's discretion."  United States v. Watts, 519 U.S. at 151-52.

Tenth Circuit case law adheres closely to the Supreme Court's results in Witte v. United States and United States v. Watts.  See United States v. Andrews, 447 F.3d 806, 810 (10th Cir. 2006)(applying Witte v. United States' holding to affirm that a career-offender enhancement does not violate the Double Jeopardy Clause of the Fifth Amendment).  In United States v.

Banda, 168 F. App'x 284 (10th Cir. 2006)(unpublished), the Tenth Circuit rejected a defendant's argument that it was "structural error" for a district court to find sentencing factors "by a preponderance of the evidence rather than the jury applying a beyond-a-reasonable-doubt standard."   168 F. App'x at 290.   The Tenth Circuit explained that "'[i]t is now universally accepted that judge-found facts by themselves do not violate the Sixth Amendment.   Instead, the constitutional error was the court's reliance on judge-found facts to enhance the defendant's sentence mandatorily.'"   168 F. App'x at 290 (quoting United States v. Lauder, 409 F.3d 1254, 1269 (10th Cir. 2005)).

In United States v. Coleman, the defendant, Troy Coleman, appealed the district court's enhancement of his sentence for firearms possession after he was convicted of conspiracy to possess and possession of a controlled substance with intent to distribute, but was acquitted of using or carrying a firearm during and in relation to a drug-trafficking crime.   See 947 F.2d at 1428.   The Tenth Circuit acknowledged that courts had taken various positions on whether a sentence may be enhanced for firearms possession despite a defendant's acquittal of firearms charges.   See 947 F.2d at 1428-29 (citing United States v. Duncan, 918 F.2d 647, 652 (6th Cir. 1990)("[A]n acquittal on a firearms carrying charge leaves ample room for a district court to find by the preponderance of the evidence that the weapon was possessed during the drug offense."); United States v. Rodriguez, 741 F. Supp. 12, 13-14 (D.D.C. 1990)(refusing to apply 2-level enhancement for firearms possession, because "[t]o add at least 27 months to the sentence for a charge of which the defendant was found not guilty violates the constitutional principle of due process and the ban against double jeopardy")).

Without discussion related to the standard of proof which a sentencing court should use to make factual findings, the Tenth Circuit held that the district court did not err in enhancing

Coleman's sentence for possession of a firearm.  See United States v. Coleman, 947 F.2d at 1429.  The Tenth Circuit based its conclusion on evidence that: (i) individuals at the arrest scene handled the weapons at will; (ii) the weapons were handled at will by individuals who lived at the house; and (iii) the weapons were kept for the protection of conspiracy participants and the narcotics involved.  See 947 F.2d at 1429.  The Tenth Circuit summarized that, in reviewing federal case law, it found "persuasive the decisions that have allowed a sentencing court to consider trial evidence that was applicable to a charge upon which the defendant was acquitted." 947 F.2d at 1429.

In United States v. Washington, 11 F.3d 1510 (10th Cir. 1993), the defendant, Patrick Washington, argued that the United States should prove drug quantities used as relevant conduct to establish a defendant's offense level by clear-and-convincing evidence rather than by a preponderance of the evidence.  See 11 F.3d at 1512.  The defendant objected to his sentencing, because the drug quantity that the district court considered as relevant conduct, and which the court found by a preponderance of the evidence, increased his Guidelines sentencing range from 210-262 months to life.  See 11 F.3d at 1515.  The defendant argued that "because the additional drug quantities effectively resulted in a life sentence[,] a higher standard of proof should be required."  11 F.3d at 1515.  Although the Tenth Circuit in United States v. Washington "recognize[d] the strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof," it held that "the Due Process Clause does not require sentencing facts in the ordinary case to be proved by more than a preponderance standard."  11 F.3d at 1516 (citing McMillan v. Pennsylvania, 477 U.S. 79, 84 (1986)).  See United States v. Sangiovanni, No. CR 10-3239 JB, 2014 WL 4347131, at *22-26 (D.N.M. Aug. 29, 2014)(Browning, J.)(ruling that a sentencing court can cross reference from the guidelines

that corresponds to the defendant's crime of conviction to the guidelines for another, more harshly punished crime, if it can be established by a preponderance of the evidence that the defendant committed the more serious crime); United States v. Cervantes-Chavez, No. CR 14-0259, 2014 WL 6065657, at *14-15 (D.N.M. Nov. 3, 2014)(Browning, J.)(cross referencing from the guideline for being an illegal alien in possession of a firearm to the drug-possession guideline after finding by a preponderance of the evidence that the defendant committed a drug-possession crime).

The Court has previously held that it may consider a defendant's refusal to answer questions for the PSR, while not drawing an adverse inference from the refusal.  See United States v. Goree, 2012 WL 592869, at *11 (D.N.M. 2012)(Browning, J.).  The Court has also determined that, although it could consider the defendant's silence about information regarding herself or others engaging criminal conduct, it would not rely on that silence to increase the defendant's sentence.  See United States v. Chapman, 2012 WL 257814, at *13 n.5 (D.N.M. 2012)(Browning, J.).  Finally, the Court has concluded that a defendant's "aggression towards other individuals, and the murder he may have attempted to orchestrate while incarcerated" is relevant information which the Court can consider in fashioning a proper sentence.  United States v. Romero, 2012 WL 6632493, at *23 (D.N.M. 2012)(Browning, J.).

## LAW REGARDING § 2K2.1(b)(6)

U.S.S.G. § 2K2.1(b)(6) provides a 4-level enhancement to a defendant's base offense level "if the defendant used or possessed any firearm or ammunition in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6).  Application note 14 to U.S.S.G. § 2K2.1 specifies that the use or possession is "in connection with" a different felony "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense."  U.S.S.G. § 2K2.1, cmt. n.

14(A).  "The plain and commonly understood meaning of 'facilitate' is to make easier."  United States v. Marrufo, 661 F.3d 1204, 1207 (10th Cir. 2011).

The Tenth Circuit has held on several occasions that physical proximity between a weapon and narcotics can be sufficient to satisfy § 2K2.1(b)(6).  See, e.g., United States v. Bunner, 134 F.3d 1000, 1006 (10th Cir. 1998); United States v. Gomez-Arrellano, 5 F.3d 464, 467 (10th Cir. 1993).  In United States v. Bunner, the Tenth Circuit explained how physical proximity could establish a nexus between a handgun and a drug-trafficking offense: "Handguns are widely recognized as a tool of the drug dealers['] trade.  Accordingly, a weapon's proximity to narcotics may be sufficient to provide the nexus necessary to enhance a defendant's sentence under § 2K2.1(b)(5)."[5]  134 F.3d at 1006.

The United States Court of Appeals for the Eighth Circuit has noted that, when a person ventures out into public with a firearm and even a small amount of drugs, "there are many ways in which the weapon can facilitate the drug offense and dangerously embolden the offender." United States v. Regans, 125 F.3d 685, 687 (8th Cir. 1997).  The Eighth Circuit has also held that a firearm facilitates or has the potential to facilitate felony-drug possession in the same manner as felony-drug trafficking -- by protecting a defendant or his drugs.  See United States v. Bell, 310 F.3d 604, 605-06 (8th Cir. 2002)(per curiam).  The Tenth Circuit reached a similar conclusion in an unpublished opinion.  See United States v. Fent, 199 F. App'x 724, 727 (10th Cir. 2006)(unpublished)(holding that the enhancement applied where the defendant possessed a firearm in connection with possessing methamphetamine).

There is no requirement that a certain amount of narcotics be recovered for § 2K2.1(b)(6) to apply.  See United States v. Condren, 18 F.3d 1190, 1999 (5th Cir. 1994)(holding that the 4-

---

[5]Section 2K2.1(b)(5) is now § 2K2.1(b)(6).  See U.S.S.G. § 2K2.1.

level enhancement "may be based on any felony, including, as here, felony possession of a small amount of drugs"); United States v. Cunningham, 2008 WL 6049940, at *8 (D.N.M. 2008)(Browning, J.).  Accordingly, courts have applied the 4-level enhancement in cases where small amounts of narcotics were recovered.  See, e.g., United States v. Washington, 340 F.3d 222, 231 (5th Cir. 2003)(rejecting the defendant's argument that "the quantity of drugs seized was too minute for anything other than personal use and that the government failed to establish a connection between the firearms and the drugs," because a controlling Fifth Circuit case -- United States v. Condren, 18 F.3d 1190 (5th Cir. 1994) -- held that "a defendant possessing the firearm 'in connection with' either drug possession or distribution triggered the sentence enhancement"); United States v. Green, 255 F. App'x 473, 474 (11th Cir. 2007)(unpublished)(upholding enhancement for having firearm and small amount of drugs for personal use); United States v. Moran-Paz, 35 F. App'x 93, 93-94 (4th Cir. 2002)(unpublished)(upholding enhancement based upon finding that defendant carried firearm to protect his small amount of drugs).

In United States v. Justice, 679 F.3d 1251 (10th Cir. 2012), the Tenth Circuit stated that it agrees "with several other circuits that have held that possession of a firearm may facilitate an offense by emboldening the possessor to commit the offense."  679 F.3d at 1255.  In that case, the defendant "was carrying methamphetamine on his person," the "firearms were within easy reach, and they were loaded"; thus, the Tenth Circuit concluded that "[a] reasonable person could find that the firearms gave him a sense of security emboldening him to venture from his home with drugs that someone might wish to take from him by force."  679 F.3d at 1255.  The Tenth Circuit cautioned, however, that "emboldenment is not always present when firearms are near drugs."  679 F.3d at 1256 (citing United States v. Jeffries, 587 F.3d 690, 691-695 (5th

Cir. 2009)(rejecting the emboldenment theory when the defendant took a gun from another man after a violent altercation, got into his car, and picked up his girlfriend; the police stopped the defendant almost immediately thereafter, and found the gun on the driver's seat and a rock of cocaine on the floor behind the seat, because, even if the cocaine belonged to the defendant, the evidence was insufficient to establish that the gun emboldened him); United States v. West, 643 F.3d 102, 115-16 (3d Cir. 2011)(rejecting application of emboldenment theory when marijuana found in glove compartment and revolver found in backpack in trunk of defendant's car); United States v. Smith, 535 F.3d 883, 886 (8th Cir. 2008)(holding that emboldenment theory not applicable because defendant did not venture from home into public with the drugs or firearms)). The Tenth Circuit emphasized that the factual setting must support the emboldenment theory, but concluded that,

> when the defendant is out and about, with drugs on his person and a loaded firearm within easy reach, one can infer from the proximity of the weapon to the drugs is not coincidental and that the firearm "facilitated, or had the potential of facilitating," the drug offense by emboldening the possessor.

United States v. Justice, 679 F.3d at 1256 (citation omitted).  Other Courts of Appeal agree.  For example, the United States Court of Appeals for the Eighth Circuit has stated: "When a drug user chooses to carry his illegal drugs out into public with a firearm, there are many ways in which the weapon can facilitate the drug offense and dangerously embolden the offender."  United States v. Fuentes Torres, 529 F.3d 825, 827 (8th Cir. 2008).  See United States v. Swanson, 610 F.3d 1005, 1008 (8th Cir. 2010)(holding, where a defendant had drugs in his pocket, and a loaded gun between the driver's seat and the center console, that, "[i]f the district court does find that the possession of a firearm facilitated or had the potential to facilitate a drug possession it will rarely be clearly erroneous").

An enhancement under § 2K2.1(b)(6) may be applied even though the felony in connection with which the firearm is possessed was not an offense for which the defendant was convicted.  See United States v. Gambino-Zavala, 539 F.3d 1221, 1230 n.3 (10th Cir. 2008).  In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that, even after United States v. Booker, as long as the guidelines are considered advisory, facts relevant to sentencing still need be proved only by a preponderance of the evidence.  See 408 F.3d at 684-685.  See also United States v. Dalton, 409 F.3d 1247, 1252 (10th Cir. 2005)("Booker therefore does not render judicial fact-finding by a preponderance of the evidence per se unconstitutional.").

The Court has noted that the 4-level enhancement has four distinct elements and that "[t]he United States must prove that the defendant: (i) used or possessed; (ii) any firearm or ammunition; (iii) in connection with; (iv) another felony offense."  United States v. Kepler, No. CR. 11-1946 JB, 2012 WL 592422, at *5 (D.N.M. Feb. 14, 2012)(Browning, J.)(citing U.S.S.G. § 2K2.1(b)(6)).  In United States v. Kepler, the United States and the defendant stipulated that § 2K2.1(b)(6)'s 4-level enhancement did not apply, and the Court accepted the stipulation, because there was a lack of evidence regarding whether the defendant or some other occupant in the house owned the locked box that contained methamphetamine and a handgun.  See 2012 WL 592422, at *6.  The Court explained that,

> [g]iven that the Court has no ability to gather or present evidence to support a sentencing enhancement, the Court is dependent in many ways on the United States to assess the strength of its arguments and evaluate whether it can prove that a particular enhancement applies.  While it is possible that the methamphetamine is attributable to Kepler, the evidence before the Court does not support a factual finding to that effect by a preponderance of the evidence. Without proof that Kepler committed another felony offense, the United States cannot establish that an enhancement under U.S.S.G. § 2K2.1(b)(6) applies.

2012 WL 592422, at *6.

In <u>United States v. Cunningham</u>, 2008 WL 6049440 (D.N.M. 2008)(Browning, J.), the Court applied § 2K2.1(b)(6)(B)'s 4-level enhancement where the defendant was apprehended carrying a small amount of crack cocaine -- one bag in his jacket and one bag in his hat -- and had a handgun in the center console of his vehicle, which was "close at hand and readily accessible."  2008 WL 6049940, at *13-14.   In <u>United States v. Pacheco</u>, 2014 WL 3421063 (D.N.M. 2014)(Browning, J.), the Court applied § 2K2.1(b)(6)(B)'s 4-level enhancement when a firearm was found in the defendant's trailer with a small amount of heroin, two digital scales, and drug paraphernalia.  <u>See</u> 2014 WL 3421063, at *12-14.  The Court reasoned that, in addition to the close proximity between the drugs and the firearm, the defendant could have used the firearm to facilitate drug trafficking by using it to protect himself and his drug supply.  <u>See</u> 2014 WL 3421063, at *14.  In <u>United States v. Barela</u>, 2015 WL 1918017, at *13 (D.N.M. 2015)(Browning, J.), the Court applied § 2K2.1(b)(6)(B)'s 4-level enhancement where the police discovered a rifle, a handgun, 7 grams of heroin, a box of hypodermic needles, and six scales in a closet in the defendant's residence.  <u>See</u> 2015 WL 1918017, at *13; <u>United States v. Barela</u>, 2016 WL 5395275 (D.N.M. 2016)(Browning, J.).  <u>See also</u> <u>United States v. Tobanche</u>, 115 F. Supp. 3d 1339 (D.N.M. 2015)(Browning, J.).

## <u>LAW REGARDING BREACH OF PLEA AGREEMENTS</u>

"Due process requires that when a plea rests to any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."  <u>United States v. Rockwell Intern. Corp.</u>, 124 F.3d 1194, 1199 (10th Cir. 1997)(internal quotations omitted).  The Court "shall not impose duties on the government that are not an express or implied part of its agreement with the defendant."  <u>United States v. Furman</u>, 112 F.3d 434, 439 (10th Cir. 1997).

Interpreting the plea bargain's terms involves a two-step process.  See Cunningham v. Diesslin, 92 F.3d 1054, 1059 (10th Cir. 1996).  First, the court must examine the nature of the prosecutor's promise.  See Cunningham v. Diesslin, 92 F.3d at 1059.  This examination means that the court reviews the government's obligations by reviewing the plea agreement's express language.  See United States v. Brye, 146 F.3d 1207, 1210 (10th Cir. 1998).  Second, "the court examines this promise based upon the defendant's reasonable understanding upon entry of the guilty plea."  United States v. Brye, 146 F.3d at 1210.  The defendant bears the burden "of proving the underlying facts establishing the breach by a preponderance of the evidence." Cunningham v. Diesslin, 92 F.3d at 1059.

"Rules of contract law inform the interpretation and enforcement of promises in a plea agreement"  United States v. Rockwell Intern. Corp., 124 F.3d at 1199.  "General principles of contract law define the government's obligations under the agreement, looking to the express language and construing any ambiguities against the government as the drafter of the agreement."  United States v. Guzman, 318 F.3d 1191, 1195 (10th Cir. 2003).  "[I]f the pleadings reveal a factual dispute on the issue of breach of a plea agreement, the district court must hold a hearing to resolve the factual issues."  United States v. Guzman, 318 F.3d at 1196 (internal quotations and alterations omitted).

When an appellate court has determined that the government has breached a plea agreement, "it is generally preferable to remand the case to the district court for its determination as to whether defendant should be resentenced [by] a different judge or should be allowed to withdraw his guilty plea."  United States v. Brye, 146 F.3d at 1213.  Resentencing before a different judge is the "pro forma" remedy for breach of a plea agreement and is usually afforded. United States v. Mata-Vasquez, 111 Fed. Appx. 986, 991 (10th Cir. 2004)("Here, Mr. Mata-

Vasquez seeks only resentencing before a different judge.  That remedy is pro forma, and usually afforded.").  See, e.g., United States v. Cachucha, 484 F.3d 1266, 1271 (10th Cir. 2007)(" In conformity with Supreme Court precedent, we therefore remand for resentencing by a different judge."); United States v. Brye, 146 F.3d at 1213; United States v. Rogers, No. CR 07-0616 JB, 2008 WL 2397669, at *5 (D.N.M. Jan. 15, 2008)(Browning, J.)("Resentencing before a different judge is the 'pro forma' remedy for breach of a plea agreement and is usually afforded.")(citing United States v. Mata Vasquez, 111 Fed. Appx. at 991; United States v. Cachucha, 484 F.3d at 1271; United States v. Brye, 146 F.3d at 1213).

The United States Court of Appeals for the Tenth Circuit has also suggested that resentencing may be permissible before the same sentencing judge.  See United States v. Vandam, 493 F.3d at 1206 (10th Cir. 2007)("Although the choice of remedy rests with the court rather than the defendant . . . we are inclined to grant Mr. VanDam the relief that he requests. Resentencing is the typical remedy for the breach of a plea agreement. . . .  When, as in this case, the defendant does not seek to withdraw his guilty plea, the less drastic remedy of resentencing appears to be most apt.").  In United States v. Vandam, the defendant argued that the United States be required to fulfill its promises in the plea agreement in front of the same sentencing judge.  See United States v. Vandam, 493 F.3d at 1206.  The Tenth Circuit noted that "the choice of remedy rests with the court rather than the defendant."  United States v. Vandam, 493 F.3d at 1206 (citing Allen v. Hadden, 57 F.3d 1529, 1534 (10th Cir. 1995), cert. denied, 516 U.S. 1000 (1995)).  The Tenth Circuit noted that Santobello v. New York, 404 U.S. 257 (1971)(holding that when the remedy is "that there be specific performance of the agreement[,] ... petitioner should be resentenced by a different judge"), "did not prohibit same-judge resentencing in all instances."  United States v. Vandam, 493 F.3d at 1206.  The Tenth Circuit decided that

resentencing by the same judge would not "threaten the institutional principles that motivated *Santobello*'s call for judicial reassignment particularly because it is the defendant -- the individual victim of the breach -- who is requesting [remand to the same judge]."  United States v. Vandam, 493 F.3d at 1206.  The Tenth Circuit emphasized that it "in no way endorse[d] the position that remand to the same judge is the usual remedy."  United States v. Vandam, 493 F.3d at 1206, n.8 (surveying cases from circuits remanding cases for sentencing in front of a different judge and noting that the D.C. circuit has adopted the view that remand to the same judge is the usual remedy).

## ANALYSIS

There is an agreement between the United States and Gross within the Plea Agreement, with the United States stipulating:

> In view of the Memorandum Opinion and Order issued in United States vs. Lopez, 2015WL5090699 and in the ambiguous context of the defendant stating that he believed that the pickup truck referred to in the admission of facts contained in paragraph six in the plea agreement was not a stolen vehicle in a stolen status, it is regarded that the United States Sentencing Guidelines § 2K2.1(b)(6)(B) is inapplicable to the sentencing in this matter.

Plea Agreement ¶ 8(b), at 5-6 (emphasis added).  By approving, in its Response, the USPO's calculation of an offense level of 23 after the application of § 2K2.1(b)(6)(B), the United States breached the Plea Agreement.  See Response ¶ 1, at 1-2.  Because the Court concludes that the United States breached part of its Plea Agreement with Gross and concludes that it should recuse itself from Gross' case, the Court will not rule on the rest of Gross' objections or requests.  The Court orders that the United States withdraw its Response and resubmit a response that corresponds with its obligation in ¶ 8(b) of the Plea Agreement.  The Court also orders Gross to withdraw his Reply, and resubmit a reply in response to the United States' newly ordered

response.  Additionally, the Court orders that the United States withdraw the Letter from Presiliano Torrez that the United States filed pursuant to the Court's Minute Order.

## I.    THE UNITED STATES BREACHED THE PLEA AGREEMENT.

The issue that the Court must resolve is whether the United States breached ¶ 8(b) of the Plea Agreement by approving of the Revised PSR's application of a 4-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B), despite the Plea Agreement' language stating that § 2K2.1(b)(6)(B) "is inapplicable to the sentencing in this matter."    If the United States breached the plea agreement, the Court should remedy the breach by ordering the United States to amend its response and delete the alleged breaching language.  The Court orders that here.

The Court can then recuse itself from the case, allowing a new judge, who is not tainted by the alleged breach, to sentence Gross.  See United States v. Vandam, 493 F.3d at 1206 (stating that resentencing is the usual remedy for a breach of plea agreement, and that "the general rule [is] that resentencing should take place in front of a different judge."); United States v. Rogers, No. CR 07-0616 JB, 2008 WL 2397669, at *5 ("Resentencing before a different judge is the 'pro forma' remedy for breach of a plea agreement and is usually afforded.")(citing United States v. Mata Vasquez, 111 Fed. Appx. at 991; United States v. Cachucha, 484 F.3d at 1271; United States v. Brye, 146 F.3d at 1213).

## II.    THE NATURE OF THE UNITED STATES' AGREEMENT WITH GROSS.

The Court begins by examining the nature of the United States' promise to Gross.  See Cunningham v. Diesslin, 92 F.3d at 1059.  The Court conducts this examination by reviewing the plea agreement's express language.  See United States v. Brye, 146 F.3d at 1210.  In the Plea Agreement, the United States stipulated:

> In view of the Memorandum Opinion and Order issued in United States vs. Lopez, 2015WL5090699 and in the ambiguous context of the defendant stating

that he believed that the pickup truck referred to in the admission of facts contained in paragraph six in the plea agreement was not a stolen vehicle in a stolen status, <u>it is regarded that the United States Sentencing Guidelines § 2K2.1(b)(6)(B) is inapplicable to the sentencing in this matter.</u>

Plea Agreement ¶ 8(b), at 5-6 (emphasis added).

The United States agreed, under the Plea Agreement's plain language, that "the United States Sentencing Guidelines § 2K2.1(b)(6)(B) is inapplicable to the sentencing in this matter." Plea Agreement ¶ 8(b), at 5-6.   In its Response, the United States approved of the USPO's analysis in the Revised PSR which applied § 2K2.1(b)(6)(B) and arrived at an offense level calculation of 23.   <u>See</u> Response ¶1, at 1.   The United States, following the Court's Minute Order, also once more reiterated the position.   <u>See</u> Torrez Letter.   At the hearing, however, after the United States considered what, precisely, the complained-of-breach was, the United States conceded that it "would not persist in [su]staining that position that that section applies . . . ."  Tr. at 8:14-18 (Spiers).

The Court concludes that "the pleadings [do not] reveal a factual dispute on the issue of breach of a plea agreement."   <u>United States v. Guzman</u>, 318 F.3d at 1196.   Although the Court invited the parties to present evidence and argument on the factual issue of breach, neither side presented evidence other than the plea agreement, their briefing, and discussion at the hearing where the United States started to comprehend the substance of the breach.   Accordingly, the Court's task is to determine the factual and legal issue of breach largely from a review of the United States' Plea Agreement with Gross, its Response, the Torrez Letter, and the discussion at the hearing.

The United States made a promise in its Plea Agreement with Gross that "it is regarded that the United States Sentencing Guidelines § 2K2.1(b)(6)(B) is inapplicable to the sentencing in this matter."  Plea Agreement ¶ 8(b), at 5-6.  While the United States made this statement in

- 37 -

connection with its discussion of § 2K2.1(b)(6)(B) as it applies to Gross' possession of a firearm in connection with a potentially stolen vehicle, the United States made the stipulation unequivocally, and did not otherwise indicate that Plea Agreement saved room for the application of § 2K2.1(b)(6)(B) in connection with a different felony.  Accordingly, the United States' approval of the Revised PSR's calculated offense level was not aligned with its express stipulation.

## III.   <u>GROSS' REASONABLE UNDERSTANDING OF THE PLEA AGREEMENT</u>.

Next, "the [C]ourt examines this promise based upon the defendant's reasonable understanding upon entry of the guilty plea," <u>United States v. Brye</u>, 146 F.3d at 1210, while cognizant that Gross bears the burden of proving the facts underlying the breach by a preponderance of the evidence, <u>see</u> <u>Cunningham v. Diesslin</u>, 92 F.3d at 1059.  In his Objections and Reply to the United States' Response, Gross maintains that the application of § 2K2.1(b)(6)(B) directly contradicts the Plea Agreement's terms.  <u>See</u> Reply at 1-3; Objections at 1.  Further, there is no indication in the Plea Agreement that § 2K2.1(b)(6)(B) might still otherwise be applied in connection with an underlying felony different from that of possession of a stolen motor vehicle.  <u>See</u> Plea Agreement at 1-11.

The Court concludes that, for federal courts, by using "[g]eneral principles of contract law defin[ing] the government's obligations under the agreement," it should "constru[e] any ambiguities against the government as the drafter of the agreement."  <u>United States v. Guzman</u>, 318 F.3d at 1195.  <u>See</u> <u>United States v. Brye</u>, 146 F.3d at 1210 ("To determine whether a breach has, in fact, occurred, we apply a two-step process: (1) we examine the nature of the government's promise; and (2) we evaluate this promise in light of the defendant's reasonable understanding of the promise at the time the guilty plea was entered."); <u>United States v. Hawley</u>,

93 F.3d 682, 692 (10th Cir. 1996)("Plea agreements are governed by contract principles"); <u>Doe v. United States</u>, 51 F.3d 693, 701 (7th Cir. 1995)("Plea agreements are contracts, which means that the first place to look in determining the extent of the government's promises under the [ ] agreement is the language of the agreement itself.").   In this case, the Court does not see anything in the United States' stipulation to be ambiguous.   The United States unequivocally stated that "it is regarded that the United States Sentencing Guidelines § 2K2.1(b)(6)(B) is inapplicable to the sentencing in this matter."   Plea Agreement ¶ 8(b), at 5-6.

## IV.   <u>THE COURT WILL RECUSE ITSELF FROM GROSS' CASE.</u>

The Court chooses the remedy for breach of a plea agreement.   <u>See United States v. Vandam</u>, 493 F.3d at 1206 (noting that "the choice of remedy rests with the court rather than the defendant").   The Court notes that the Tenth Circuit has left the decision to the district court whether a different judge should resentence the defendant, or whether the defendant should be allowed to withdraw his or her guilty plea.   <u>See United States v. Brye</u>, 146 F.3d at 1213 (stating that "it is generally preferable to remand the case to the district court for its determination as to whether defendant should be resentenced to a different judge or should be allowed to withdraw his guilty plea").   Resentencing usually occurs before a different judge.   <u>See</u>, <u>e.g.</u>, <u>United States v. Mata-Vasquez</u>, 111 Fed. Appx. 986, 991 (10th Cir. 2004)("Here, Mr. Mata-Vasquez seeks only resentencing before a different judge.   That remedy is pro forma, and usually afforded."). <u>See</u>, <u>e.g.</u>, <u>United States v. Cachucha</u>, 484 F.3d 1266, 1271 (10th Cir. 2007)("In conformity with Supreme Court precedent, we therefore remand for resentencing by a different judge."); <u>United States v. Brye</u>, 146 F.3d at 1213; <u>United States v. Rogers</u>, 2008 WL 2397669, at *5 (D.N.M. 2008)(Browning, J.)("Resentencing before a different judge is the 'pro forma' remedy for breach of a plea agreement and is usually afforded.")(citing <u>United States v. Mata Vasquez</u>, 111 Fed.

Appx. at 991; United States v. Cachucha, 484 F.3d at 1271; United States v. Brye, 146 F.3d at 1213).  See also United States v. Vandam, 493 F.3d at 1206 (10th Cir. 2007)(involving a scenario where the defendant sought resentencing from the same judge, holding that "[a]lthough the choice of remedy rests with the court rather than the defendant . . . we are inclined to grant Mr. VanDam the relief that he requests.  Resentencing is the typical remedy for the breach of a plea agreement. . . .  When, as in this case, the defendant does not seek to withdraw his guilty plea, the less drastic remedy of resentencing appears to be most apt.").

Because the Court has found that the United States breached ¶ 8(b) of its Plea Agreement with Gross, and the Court read the United States' Response and the Torrez Letter containing the prohibited acceptance of the USPO's Revised PSR, it will recuse itself from Gross' case.  Gross did not request that the Court remain on the case.  Indeed, Gross looked over his shoulder and smiled at his family after the Court said that it would assign the case to another judge.  Also, the Court had a "cheat sheet" that it had written before the hearing to give it a tentative ruling.  The "cheat sheet" said that the enhancement ought apply.  It is hard to unring that bell.  The Court will give the Defendant a clean slate to persuade another judge who is not tainted by what has happened.  The Court concludes that "the interest of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by" assignment to a different judge.  Santobello v. New York, 404 U.S. at 263.

Gross may also desire to withdraw from his plea agreement.  He has not, however, requested such a remedy.  If he desires such a remedy, he remains free to do so.

Because the Court has determined that the United States has breached a portion of its Plea Agreement with Rogers, and has recused itself, the Court will not rule on the balance of his Objections or his request for departures and/or variance under 18 U.S.C. § 3553(a).  The Court

- 40 -

will leave these decisions for another judge untainted by the United States' Response, the Torrez

Letter, and the United States' arguments early on in the hearing.  In its new Response, the United

States must be careful to uphold the agreements that it makes in the Plea Agreement.

      **IT IS ORDERED** that: (i) the Plaintiff United States of America withdraw the Response

by the United States to the Defendant's Sentencing Memorandum and Request for a Sentence

Variance, filed October 17, 2016 (Doc. 41), and resubmit a response that corresponds with its

obligation in ¶ 8(b) of the Plea Agreement, <u>see</u> Plea Agreement ¶ 8(b), at 5-6, filed August 18,

2016 (Doc. 31); (ii) Defendant Billy Gross withdraw his Reply RE Government Response to

Objections to PSR, filed November 18, 2016 (Doc. 45), and resubmit a reply in response to the

United States' new response ordered above;  (iii) United States of America withdraw the Letter

from Presiliano Torrez, filed October 18, 2016 (Doc. 46); and (iv) this case be reassigned to

another judge.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
  United States Attorney
Paul H. Spiers
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

      *Attorney for Plaintiff*

Kari Converse
  Federal Public Defender
Albuquerque, New Mexico

      *Attorney for Defendant*